UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:22-cv-00393

| | |
|---|---|
| THERESA COFFIN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) COLLECTIVE ACTION COMPLAINT ) |
| EISENBERG LOGISTICS GREENSBORO, INC., | ) ) ) ) |
| Defendant. | ) ) ) |

Plaintiff, Theresa Coffin ("Plaintiff" or "Coffin"), individually and on behalf of all other similarly situated employees, by and through counsel, brings claims as a Collective Action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., against Defendant Eisenberg Logistics Greensboro, Inc. ("Defendant"). Plaintiff brings individual claims against Defendant for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.7 and North Carolina common law.

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings her FLSA claims pursuant to 29 U.S.C. § 216(b) and seeks to recover unpaid overtime compensation and statutory penalties during the three-year period preceding the filing of this Complaint.

2. Plaintiff's FLSA claims result from: (1) Defendant's policy and practice of failing to pay Plaintiff overtime compensation for work performed in excess of 40 hours

1

per workweek; and (2) Defendant's policy and practice of failing to record all hours worked by Plaintiff.

3. Plaintiff brings her claim for unpaid overtime compensation on behalf of herself and others similarly situated as an opt-in collective action pursuant to the FLSA.

4. Plaintiff's individual NCWHA claim arises from Defendant's failure to pay Plaintiff earned wages on the regularly scheduled payday following the termination of her employment.

5. Plaintiff's Breach of Contract claim against Defendant results from Defendant's breach of the valid and enforceable compensation contract between Plaintiff and Defendant.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

8. The claims for violations of the NCWHA and Breach of Contract are based on the statutory law and common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same common nucleus of operative facts as the FLSA claims.

9. All causes of action alleged by Plaintiff can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

10. This Court has personal jurisdiction because Defendant conducts substantial business in Guilford County, North Carolina, which is located within this judicial district.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Guilford County, North Carolina, which is located within this judicial district.

## PARTIES

12. Plaintiff is an adult individual and a resident of Burlington, North Carolina.

13. Defendant is a domestic corporation registered and in good standing in the State of North Carolina.

## COVERAGE ALLEGATIONS

14. During the three-year period preceding the filing of this Complaint, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. During the three year period preceding the filing of this Complaint, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

16. During the three-year period preceding the filing of this Complaint, Plaintiff was an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17. During the three-year period preceding the filing of this Complaint, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

18. Defendant is an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

19. Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. § 95-25.2(4).

## **PLAINTIFF'S FACTUAL ALLEGATIONS**

20. Defendant operates a package pickup and delivery business servicing customers throughout the State of North Carolina.

21. At all relevant times, Plaintiff was a nonexempt employee within the meaning of the FLSA and eligible for overtime compensation for all work performed in excess of 40 hours in a workweek.

22. Defendant employed Plaintiff during the FLSA's three-year statutory period preceding the filing of this complaint.

23. Defendant employed Plaintiff from February 2021 to January 2022.

24. At all times relevant to this Complaint, Defendant paid Plaintiff a fixed rate for each day worked.

25. At all times relevant to this Complaint, Plaintiff worked more than forty hours per week delivering packages for Defendant.

26. Defendant stores all of its vehicles at the FedEx Ground facility (the "FedEx facility") in Whitsett, NC.

27. During Plaintiff's employment, Defendant owned between 19-25 vehicles and employed approximately 25 other delivery drivers.

28. Defendant required its delivery drivers to arrive at the FedEx facility between 5:00 a.m. and 8:00 a.m. Coffin typically arrived at the FedEx facility between 6:30 a.m. and 7:00 a.m.

29. Every work day, Defendant required Coffin to load her vehicle with the packages designated for her assigned routes. Once Coffin completely loaded her vehicle, she would begin assisting other delivery drivers with loading their vehicles. Additionally, Defendant required Coffin to perform a pre-trip inspection consisting of inspecting the vehicle's tires, fluids, headlights, taillights, wipers, and blinkers, as well as check the vehicle for dents and scratches. Coffin estimates the pre-trip inspection took 15 minutes to complete.

30. Delivery drivers were not allowed to leave the FedEx facility until FedEx dispatched them, which typically occurred between 8:00 a.m. and 9:00 a.m.

31. Defendant required Coffin to login to the FedEx system using her FedEx issued ELD handheld device and her unique username and password.

32. Defendant's owner, Bruce Eisenberg, did not permit Coffin and other similarly situated delivery drivers to log-in to ELD handheld until FedEx dispatched them.

33. Defendant required Coffin to attempt delivery of every package in the truck before returning to the FedEx facility. Defendant tracked Coffin's location at all times using GPS.

34. Coffin returned to the FedEx facility each workday between noon and 3:00 a.m., depending on the number of deliveries assigned to her. On average, Coffin returned to the FedEx facility at or about 5:00 p.m.

35. If Coffin worked past 11:59:59 p.m., the ELD handheld automatically signed her out for the day, and she was not able to sign back in until the following work shift.

36. Coffin worked Tuesday through Saturday during the "normal" season. Coffin additionally worked on Sunday during the "peak" season, which occurred from the end of October through December 24.

37. Defendant required Coffin to complete a post-trip inspection of her assigned vehicle upon her return to the FedEx facility. Additionally, Defendant required Coffin to put any remaining packages back on FedEx' line for sorting and re-shipping, due to her picking up new packages or because a customer was not able to sign for the package. Once all required tasks were completed, Coffin would sign out of the ELD handheld, marking the end of her shift.

38. During the time period of about February 2021 until about mid-November 2021, Coffin drove vehicles with a gross vehicle weight rating of 10,000 pounds or less.

39. Defendant had knowledge that Coffin regularly worked in excess of forty (40) hours per workweek without being paid overtime as required by the FLSA.

40. Defendant did not pay overtime to Coffin for hours worked in excess of forty (40) per workweek.

41. Defendant violated the FLSA by failing to pay overtime wages earned by Coffin.

42. Defendant violated the FLSA by failing to accurately track all hours worked by Coffin during each workweek.

43. Defendant's violation of the FLSA was willful.

44. Defendant offered an employee Bonus Program. Defendant's Bonus Program provided each full-time employee with a $1,200.00 additional payment at the end of each calendar year "if they had no ineligible events" "during the observation period of March 8–Dec 31." According to Defendant's Bonus Program, an employee "must be employed full-time by said employer to the end of the bonus period to be eligible." A true and accurate copy of Defendant's Bonus Program is attached to this Complaint as Exhibit A.

45. Ineligible events are defined as "(1) A preventable accident as defined in the Safe Driving Program, (2) a driver disqualification as identified in the Safe Driving Program, or (3) the receipt of one verified complaint." A "verified complaint" includes, but is not limited to, complaints about the following:

    a. Driver release to business
    b. Unauthorized indirect deliveries
    c. Rudeness, abusive, or objectionable language or behavior
    e. Failure to follow customers instructions[1]
    f. Unsafe driving

---

[1] Defendant's list of examples omits subitem d.

      g. Accidents or property damage
      h. Disputed signature
      i. Non-compliant signature services
      j. Disputed delivery attempt complaint on adult, direct, or indirect signature require packages
      k. Missed Pickups/Call tags
      l. Scanner Not Used to Process Pickup

46. Coffin began her employment as a full-time delivery driver in February 2021 and Defendant terminated her employment in January 2022. Coffin was a full-time employee employed with Defendant during the eligibility period. During the eligibility period, Coffin did not have any "ineligible events" nor did she receive any "verified complaints." Thus, Coffin was eligible for and earned the $1,200.00 bonus payment.

47. Defendant refused to pay Coffin the $1,200.00 bonus payment on the next regularly scheduled payday following the termination of her employment.

48. Defendant willfully violated the NCWHA.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

49. Coffin brings this collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime wages, liquidated damages, and other damages related to Defendant's violation of the FLSA.

50. Coffin pursues the requested relief on behalf of the following individuals ("the Collective"):

> **All individuals who currently work, or have worked, for Defendant as a delivery driver at any time within the preceding 3-years from the date of filing the complaint.**

51. Coffin is a member of the Collective she seeks to represent because she was employed by Defendant during the relevant period, routinely suffered or was permitted to

8

work more than 40 hours per week, as described above, and was not paid an overtime premium rate for all time she worked over 40 hours per workweek.

52. Specifically, Defendant created and implemented an unlawful payroll scheme to avoid paying Coffin and similarly situated delivery drivers overtime pay.

53. This action may be properly maintained as a collective because:

   a. Coffin and similarly situated delivery drivers were all paid under the same compensation structure;

   b. Coffin and similarly situated delivery drivers were all subject to the same terms and conditions of employment including uniform policies and procedures regarding loading times, dispatch times, time tracking, delivery requirements, vehicle assignments, GPS tracking, and completing pre-trip and post-trip inspections;

   c. Coffin and similarly situated delivery drivers worked in excess of forty (40) hours per week during one or more workweeks while employed by Defendant;

   d. Defendant required Coffin and similarly situated delivery drivers to perform work "off-the-clock";

   e. Defendant did not pay Coffin and similarly situated delivery drivers an overtime premium of one and one-half their regular hourly rate for all time worked in excess of 40 hours per workweek; and

   f. Defendant maintained common timekeeping and payroll systems and policies with respect to Coffin and similarly situated delivery drivers.

54. Defendant encouraged, suffered, and permitted Coffin and similarly situated delivery drivers to work more than forty (40) hours per workweek without proper overtime compensation.

55. Defendant knew that Coffin and similarly situated delivery drivers performed work that required additional wages and overtime compensation to be paid. Nonetheless, Defendant operated under a scheme, as previously described, to deprive Coffin and similarly situated delivery drivers of wages and overtime compensation.

56. Defendant's conduct as alleged herein was willful and has caused damages to Coffin and similarly situated delivery drivers.

57. Defendant is liable under the FLSA for failing to properly pay Coffin and similarly situated delivery drivers overtime wages. Coffin requests that the Court authorize notice to the members of the Collective to inform them of the pendency of this action and their right to "opt-in" to his lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

58. Coffin estimates that the Collective, including both current and former employees over the relevant period, will include more than 25 members. The precise number of the Collective should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from Coffin as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the collective class, its members may be informed of the pendency of this action directly via U.S. mail and e-mail.

## COUNT I
### (Violation of FLSA – Failure To Pay Overtime Wages Under The FLSA For All Overtime Hours Worked) (Collective Action)

59. Coffin realleges and incorporates by reference all the paragraphs above in this Complaint as though full set forth herein.

60. Defendant operates an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

61. Coffin and similarly situated delivery drivers are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

62. FLSA Section 207(a)(1) stats that an employee must be paid an overtime rate, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

63. Throughout the relevant period, Defendant violated the FLSA by routinely suffering or permitting Plaintiff to work overtime hours each week without paying them premium overtime pay.

64. Throughout the relevant period, Coffin and similarly situated delivery drivers each worked in excess of forty (40) hours per week during one or more workweeks but were not paid an overtime premium of one and one-half times their regular rate for all of those additional hours.

65. Defendant's actions described in this Complaint violated the FLSA.

66. Defendant's actions were willful and not in good faith.

67. Coffin and similarly situated delivery drivers have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of forty (40) hours per week from which Defendant derived a direct and substantial benefit.

68. Defendant is liable to Coffin and similarly situated delivery drivers for actual damages, liquidated damages, and equitable relief pursuant to 29 U.S.C. § 216(b) as well as reasonable attorneys' fees, costs, and expenses.

69. Coffin and similarly situated delivery drivers are also entitled to injunctive relief to prevent Defendant from continuing their violation of the FLSA and other appropriate class-wide injunctive relief.

## COUNT II
**(Violation of NCWHA – Failure to Pay Wages at Separation) (Individually)**

70. Coffin realleges and incorporates by reference all the paragraphs above in this Complaint as though full set forth herein

71. Count II arises from Defendant's policy and practice of failing to pay earned wages on the next regular payday following the termination of Plaintiff's employment in violation of N.C. Gen. Stat. § 95-25.7.

72. Coffin earned a $1,200.00 bonus, which constitutes "wages" under the NCWHA.

73. Defendant violated N.C. Gen. Stat. § 95-25.7 by failing to pay Coffin her earned wages on the next regular payday following the termination of her employment.

74. Defendant's violation of the NCWHA was willful.

## COUNT III
### (Breach of Contract) (Individually)

75. Coffin realleges and incorporates by reference all the paragraphs above in this Complaint as though full set forth herein

76. The parties, for valuable consideration, entered into a valid and enforceable contract whereby Defendant agreed to provide Coffin with a bonus payment at the end of the year.

77. In breach of the express terms of the agreement, Defendant failed to pay Coffin her earned bonus.

78. Defendant has refused repeated attempts by Coffin to rectify its breach, thus forcing Coffin to initiate this matter.

79. Defendant's breach is the actual and proximate cause of Coffin's damages.

## PRAYER FOR RELIEF

WHEREFORE, Coffin, individually and on behalf of all others similarly situated, by and through her attorneys, demands judgment against Defendant and in favor of Coffin and all others similarly situated, for a sum that will properly, adequately and completely compensate Coffin and all others similarly situated for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Order the Defendant to file with this Court and furnish to counsel a list of all names, telephone numbers, e-mail addresses, and home addresses of all delivery drivers who have worked for Defendant within the last three years;

B. Authorize Coffin's counsel to issue notice via U.S. Mail and e-mail at the earliest possible time to all delivery drivers who worked for Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of overtime compensation, as required by the FLSA;

C. Certify Coffin's FLSA claim as a collective action;

D. Declare and find that Defendant committed one or more of the following acts:

   i. violated provisions of the FLSA by failing to pay overtime wages to Coffin and similarly situated employees who opt-in to this action; and

   ii. willfully violated provisions of the FLSA.

E. Award compensatory damages, including all regular and overtime wages owed in an amount according to proof;

F. Award liquidated damages on all compensation due accruing from the date such amounts were due;

G. An Order pursuant to the NCWHA finding Defendant liable for unpaid regular wages due to Plaintiff and for liquidated damages equal in amount to the unpaid bonus found due to Plaintiff;

H. An Order finding Defendant breached its contract with Plaintiff to pay a bonus and award damages equal to the unpaid commissions due to Plaintiff;

I. An Order awarding compensatory damages for Defendant's breach of contract;

J. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

K. Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

L. For such further relief as the Court deems just and equitable.

Dated: May 24, 2022

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Email: phil@gibbonslg.com
      corey@gibbonslg.com

*Attorneys for Plaintiff(s)*